UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

KENNETH H. LOONEY, AS TRUSTEE, )
FOR MICHEL ROBISON,            )
                               )
     Plaintiff,                )
                               )
vs.                            )   Civil Action No. CV-97-S-1122-NE
                               )
DEAN WITTER REYNOLDS, INC.,    )
                               )
     Defendant.                )
                               )

FILED
99 JUN 10 AM 11:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED on
JUN 1 0 1999

## MEMORANDUM OPINION

This action is before the court on plaintiff's motion to modify or vacate the arbitration award, along with defendant's motion to confirm the arbitration award. The motions were originally scheduled to be heard on the May 26, 1999, motion docket. The case was removed from that docket, however, on plaintiff's motion to continue motion docket setting. (Documents No. 22 and 23.) Upon further consideration of the motion, pleadings, and briefs of counsel, the court has determined that it would not be aided by oral arguments and, accordingly, enters the following memorandum opinion confirming the arbitration award.

### I. STATEMENT OF THE CASE

Randall Robinson opened the first of four brokerage accounts with Dean Witter Reynolds, Inc. (Dean Witter) during November of

1993.¹ Kenneth Looney is the Trustee of one of those accounts: a trust account established for the benefit of Robison's minor daughter, the purpose of which was to fund the child's college education. Benjamin Pearce was the broker in charge of all Robison-related accounts at Dean Witter. Mr. Pearce recommended Robison purchase 1,000 shares of stock in a Huntsville telecommunications company, Adtran, for his joint account in September of 1994. Over the next several months, Robison made numerous purchases of Adtran stock for each of the brokerage accounts, including the trust account. Some of the purchases were on a margin that, at times, exceeded one million dollars. As a result of these stock purchases, the Robison-related accounts lost approximately $640,000 between May 1995 and May, 1997.

Plaintiff alleges that Pearce recommended Robison put essentially all of his investments in Adtran, a speculative stock. Plaintiff alleges these recommendations were unsuitable within the meaning of Alabama Securities Commission Rule 830-X-3-12.²

---

¹ In November, 1993, Robison opened a Simplified Employee Pension Individual Retirement Account (No. 638-044169) and a standard IRA (No. 638-043997). In April 1994, Robison established the trust account at issue here (No. 638-044795) for the benefit of his minor daughter Michel. In September 1994, Robison and his wife Brenda opened a joint account (No. 638-045631).

² Alabama Securities Commission Rule 830-X-3-12 entitled "Suitability of Reccomendations" reads as follows:

Every dealer, investment adviser and every associated person therof who recommends to a customer the purchase, sale or exchange of any

2

Plaintiff also alleges the recommendations resulted in "churning" of the Robison-related accounts within the meaning of Alabama Securities Commission Rule 830-X-3-18.[3]

Benjamin Pearce and Dean Witter admit Adtran stock was initially recommended to Robison. Both, however, contend Robison became infatuated with the company and rejected defendant's advice to sell the stock, or at least reduce his risk exposure to that stock and eliminate his margin debt. Dean Witter alleges Robison's failure to follow its advice caused the losses.

---

security shall have reasonable grounds to believe and shall believe that the recommendation is suitable for such customer on the basis of information furnished by such customer after reasonable inquiry concerning the customer's investment objectives, financial situation and needs, and any other information known by such dealer, investment adviser or associated person thereof.

[3] Rule 830-X-3-18 reads in pertinent part:

(1) No dealer, investment adviser, agent or investment adviser representative, or officer, partner, director, or agent of any thereof, shall effect or induce or attempt to induce any transaction in any insurance or securities portfolio of a prospective investor or customer for the purpose of sale or purchase of securities, mutual funds or insurance, or any other investment, by "twisting" or "churning."

. . .

(3) "Churning" shall mean any action of a dealer, investment adviser, agent or investment adviser representative, or officer, partner, director, or agent of any thereof, acting in its own interest and against the interest of its customer, which effects or induces transactions in the customer's account which are excessive in size and frequency in the light of the nature of the account and the financial resources and investment needs and objectives of the customer.

3

## II. PROCEDURAL HISTORY

This action originally was filed in the Circuit Court of Jackson County, Alabama, on April 4, 1997. (Document No. 1.) Defendant removed the case to this court pursuant to 28 U.S.C. §§ 1332 and 1441 on May 5, 1997, based upon the parties' diversity of citizenship and the requisite amount in controversy. (Document No. 1.) Defendant filed a motion to compel arbitration on May 14, 1997. (Document No. 6.) Plaintiff did not oppose that motion and, on June 20, 1997, this court granted defendant's motion and stayed all proceedings pending the outcome of arbitration. (Document No. 10.) This action, along with the related action styled *Randall Robison and Brenda Robison v. Dean Witter Reynolds, Inc.*, CV 97-B-816-S, were consolidated for purposes of hearing and award before an arbitration panel of the National Association of Securities Dealers (NASD). The arbitration hearing was held October 29-31, 1998, in Atlanta, Georgia. The arbitration panel issued its decision on November 17, 1998.

Defendant filed a status report on February 16, 1999, indicating that the arbitration panel had issued an award dismissing all claims of plaintiff. (Document No. 16.) On the same date, plaintiff filed the present motion to modify or vacate the arbitration award. (Document No. 15.) Defendant filed an

4

opposition to plaintiff's motion, along with its motion to confirm the arbitration award on March 15, 1999. (Document No. 20, 21.)

### III. DISCUSSION

Judicial review of commercial arbitration awards is controlled by the Federal Arbitration Act (FAA). *See* 9 U.S.C. §§ 1-16. The Eleventh Circuit has observed that "[t]he purpose of the Federal Arbitration Act [is] to relieve congestion in the courts and to provide parties with an alternative method for dispute resolution that would be speedier and less costly than litigation." *Booth v. Hume Publishing, Inc.*, 902 F.2d 925, 932 (11th Cir. 1990) (citing *O.R. Securities v. Professional Planning Associates*, 857 F.2d 742, 745-46 (11th Cir. 1988)). In line with that purpose, it is well settled that judicial review of an arbitration award is narrow. *See Lifecare International, Incorporated v. CD Medical, Inc.*, 68 F.3d 429, 433 (11th Cir. 1995) (quoting *Davis v. Prudential Securities, Inc.*, 59 F.3d 1186, 1190 (11th Cir. 1995)). "Federal courts should defer to the arbitrator's resolution of the dispute whenever possible." *Robbins v. Day*, 954 F.2d 679, 682 (11th Cir. 1992), *cert. denied*, 506 U.S. 870, 113 S.Ct. 201, 121 L.Ed.2d 143 (1992). Congress specified only five categories of circumstances in which arbitration awards may be vacated:

5

(1) Where the award was procured by corruption, fraud, or undue means.

(2) Where there was evident partiality or corruption in the arbitrators, or either of them.

(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

(5) Where an award is vacated and the time within which the agreement required the award to be made has not expired the court may, in its discretion, direct a rehearing by the arbitrators.

9 U.S.C. § 10(a). The Eleventh Circuit recognizes three additional, non-statutory grounds upon which an arbitration award may be vacated: 1) if the award is arbitrary and capricious; 2) if the award is in contravention of public policy; or 3) if the award is entered in "manifest disregard of the law." *See Scott v. Prudential Securities, Inc.*, 141 F.3d 1007, 1017 (11th Cir. 1998). Moreover, the party seeking to modify or vacate the arbitration award bears the burden of setting forth sufficient grounds to vacate the award. *See O.R. Securities, Inc. v. Professional Planning Associates*, 857 F.2d 742, 748 (11th Cir. 1988).

6

The sole issue presented to this court also was presented to the arbitration panel: *i.e.*, "[w]hether ... the arbitrators believed Randall Robison's version, or Dean Witter's version, of what transpired with respect to the activity in the Robinson-related accounts." (Defendant's brief in opposition to plaintiff's motion to modify or vacate arbitration award, Document No. 20, at 5.)

Plaintiff relies on the FAA, as well as non-statutory bases, in support of his motion to modify or vacate the arbitration award: 1) the award was arbitrary and capricious; 2) the award was in contravention of public policy; 3) the award was in manifest disregard of the law; and 4) the award demonstrates the arbitration panel's evident partiality. Each argument will be addressed separately.

### A. Arbitrary And Capricious Award

"An arbitration award will not be held arbitrary and capricious unless a ground for the arbitrator's decision can[not] be inferred from the facts of the case." *Scott*, 141 F.3d at 1017 (internal quotations marks omitted).

Plaintiff makes three arguments in an attempt to show the arbitration award was arbitrary and capricious: 1) Randall Robinson's Adtran investments must have been directed by Benjamin

7

Pearce, because the transactions were virtually identical to transactions occurring in Pearce's personal account; 2) Adtran investments were directed by Pearce, because the trade tickets were marked "solicited"; and, 3) Robison could not have directed the investments himself, because he is uneducated and an unlikely candidate for speculative securities trading. Based upon the record before this court, none of these arguments possess merit.

Defendant presents evidence that Robison was warned on numerous occasions between February, 1996, and January, 1997, to reduce his Adtran investment, but Robison refused the advice, instead continuing to increase his Adtran holdings. Robison also attempted to continue to invest in Adtran stock after the present lawsuit had been filed. Pearce, however, refused to make such transactions and Robison moved his brokerage accounts to another firm, Robinson Humphrey. His new broker, Ralph Jones, testified at the arbitration hearing that Robison has continued investing in speculative securities.

Defendant also presents evidence that trading in Robison's account was not sufficiently similar to the trading in Pearce's account. Defendant presents evidence the term "solicited" is used to indicate a broker only gave some information to the client that

8

led to a transaction, rather than the term "recommended" which would lead to a suitability lawsuit.

Finally, defendant presents evidence that Robison is not the uneducated, unsophisticated, and risk-averse investor as plaintiff has portrayed him. Robison has owned two successful businesses, and his business partner, Wade Copeland, testified during the arbitration hearing that Robison was a "astute businessman with an uncanny knack for numbers." Copeland further testified that Robison was not conservative by nature.

The foregoing evidence is sufficient to demonstrate reasonable grounds upon which the arbitrators could have based their decision. The arbitration award, therefore, was not arbitrary and capricious. Accordingly, plaintiff's motion to modify or vacate the arbitration award is due to be denied.

**B. Public Policy**

The Supreme Court interpreted the "violation of public policy" ground for reversing an arbitration decision in *United Paperworkers International Union, AFL-CIO v. Misco*, 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987), as being limited to situations "where the contract as interpreted would violate some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general

9

considerations of supposed public interests." *Id.* at 43, 108 S.Ct. at 373 (internal quotations mark omitted) (quoting *W.R. Grace & Co. v. Rubber Workers*, 461 U.S. 757, 766, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298 (1983)).

Plaintiff failed to provide a "well defined" public policy the arbitration panel violated. Plaintiff presents only generalized considerations pertaining to the meaning of the Uniform Securities Act, as well as the Alabama Securities Act. Accordingly, plaintiff's second basis for his motion to modify or vacate the arbitration award is due to denied.

### C. Manifest Disregard of the Law

"An arbitration board that incorrectly interprets the law has not manifestly disregarded it. It has simply made a legal mistake. To manifestly disregard the law, one must be conscious of the law and deliberately ignore it." *Montes v. Shearson Lehman Brothers, Inc.*, 128 F.3d 1456, 1461 (11th Cir. 1997) (citing *O.R. Securities*, 857 F.2d at 747). "If there is even a barely colorable justification for the outcome reached, the court must confirm the arbitration award." *Areca, Inc. v. Oppenheimer & Co., Inc.*, 960 F. Supp. 52, 57 (S.D. N.Y. 1997) (internal quotation marks omitted).

10

Plaintiff contends the arbitration award was in manifest disregard of the Alabama Securities Act § 8-6-19(a), which provides for mandatory damages for violations of the Act or its rules.[4] Plaintiff argues the arbitration panel was well aware of the Act and rules and deliberately choose not to enforce them.

After reviewing the arguments of the parties on this motion, this court finds that more than a colorable basis exists for the dismissal of plaintiff's claims. Plaintiff failed to carry his burden of demonstrating that the arbitrators knew of a governing legal principle, yet refused to apply it or ignored it altogether. Accordingly, the plaintiff's motion is due to be denied as to his third basis.

### D.    Evident Partiality

The Eleventh Circuit has strictly construed this statutory basis for vacating an arbitration award. In *Gianelli Money Purchase Plan and Trust v. AM Investor Services, Inc.*, 146 F.3d

---

[4] Alabama Securities Act § 8-6-19(a) provides in pertinent part:

(a)   Any person who:
   (1)   Sells or offers to sell a security in violation of any provision of this article or of any rule or order imposed under this article ... is liable to the person buying the security from him who may bring an action to recover the consideration paid for the security, together with interest at six percent per year from the date of payment, court costs and reasonable attorneys' fees. ...

11

1309, 1312 (11th Cir. 1998), the court said that "[t]he allegedly partiality must be direct, definite and capable of demonstration rather than remote, uncertain and speculative." (quoting *Middlesex Mutual Insurance Company v. Levine*, 675 F.2d 1197, 1202 (11th Cir. 1982)). The *Gianelli* Court set forth two situations in which an arbitration award may be vacated due to the "evident partiality" of an arbitrator: "1) an actual conflict exists, or 2) the arbitrator knows of, but fails to disclose, information which would lead a reasonable person to believe that a potential conflict exists." *Id*.

Plaintiff does not assert actual bias on the part of any individual arbitrator. Instead, he asserts that a conflict exists because the arbitration panel was selected by NASD, defendant's trade association. Plaintiff also did not object to the composition of the panel until after it dismissed the case.

The First Circuit recently addressed the "structural bias" issue in *Rosenberg v. Merrill Lynch, Pierce, Feiner & Smith, Inc.*, 170 F.3d 1 1st Cir. 1999). The Rosenberg Court held that a party seeking to avoid arbitration may not rely on the "structural bias" of the arbitration process, but instead must show actual bias of an arbitrator. *Id.* at 14.

12

Because plaintiff does not allege specific conflicts with any individual arbitrator, his argument for evident partiality fails. Accordingly, plaintiff's motion is due to be denied as to the fourth claim for modifying or vacating the arbitration award.

### IV. CONCLUSION

Based on the foregoing reasons, plaintiff's motion to modify or vacate the arbitration award is due to be **denied**. Accordingly, defendant's motion to confirm the arbitration award is due to be **granted**. A separate judgment consistent with this memorandum opinion will be entered contemporaneously herewith.

**DONE** this 10th day of June, 1999.

_____
United States District Judge